IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

ANTHONY DOUGLAS )
DEBAUSE, )
 )
      Plaintiff, )
 )
      v. ) Case No. CIV-15-224-RAW-SPS
 )
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
 )
      Defendant. )

## REPORT AND RECOMMENDATION

The claimant Anthony Douglas DeBause requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. As set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

## Claimant's Background

The claimant was born on August 11, 1969, and was forty-three years old at the time of the administrative hearing (Tr. 36). He completed the ninth grade, and has worked as a sheet rock applicator (Tr. 23, 174). The claimant alleges inability to work since July 7, 2007, due to severe diabetic neuropathy, shoulder pain, and back pain (Tr. 173).

## Procedural History

On December 8, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Michael Harris conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 31, 2013 (Tr. 12-25). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform light work, as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except that he could occasionally climb, balance, stoop, kneel, crouch, or crawl; could only occasionally reach away from the body, including overhead with the non-dominant left arm; and that he must avoid concentrated exposure to extreme cold and vibration, and avoid even moderate exposure to hazards, such as

moving machinery and unprotected heights (Tr. 16). The ALJ concluded that although the claimant could not return to his past relevant work, the claimant was nevertheless not disabled because there was work he could perform, *i. e.*, bakery inspector, film counter clerk, and rental consultant (Tr. 24).

## Review

The claimant contends that the ALJ erred: (i) by failing to identify his mental impairments as severe and further failing to account for them at step five, and (ii) by failing to properly assess his credibility.[2] The undersigned Magistrate Judge finds both the claimant's contentions persuasive.

The ALJ found that the claimant had the severe impairments of diabetes mellitus, neuropathy, shoulder and back pain, and seizure disorder, but that his depressive disorder was nonsevere (Tr. 14). The medical evidence relevant to this appeal reflects that the claimant was hospitalized from June 4-8, 2009, with seizures, diabetes mellitus, type 2, present on admission, and status post altered mental status secondary to postictal confusion (Tr. 372). He was then hospitalized from June 11-24, 2009, having been involuntarily admitted at first, then voluntarily staying thereafter until his discharge (Tr. 491). Upon admission, the claimant had been confused, disoriented, and had disorganized thoughts, but had improved "remarkably" and had his medications adjusted, particularly his insulin. He was advised to see his regular physician as well as a mental

---

[2] Under Local Civ. R. 7.1(c), "[b]riefs exceeding fifteen (15) pages in length shall be accompanied by an indexed table of contents showing headings and subheadings and an indexed table of statutes, rules, ordinances, cases, and other authorities cited." The claimant's brief fails to comply with this rule, but the undersigned Magistrate Judge nevertheless elects to address the merits of the claimant's contentions.

health provider, but was reluctant for mental health treatment (Tr. 493-494). His discharge diagnoses included mood disorder, not otherwise specified (Tr. 494). He was then hospitalized again on July 23-26, 2009, for diabetic ketoacidosis, gastritis, hematuria, and seizure disorder (Tr. 412). After that, the Central Oklahoma Family Medical Center listed depression as one of the claimant's impairments and he was prescribed a medication regimen (Tr. 278).

On October 22, 2009, Gerald Ball, Ph.D., conducted a mental status evaluation of the claimant (Tr. 528). Dr. Ball's brief assessment concluded that the claimant's Axis I diagnosis was adjustment disorder with depressed mood, and Dr. Ball found that the claimant could handle benefits if awarded (Tr. 529). Dr. Ball attempted to administer the WRAT-3, but the claimant could not see well enough to read, although other tasks indicated that the claimant was functioning in the average range of intelligence with an approximate IQ of 100 (Tr. 529).

On August 1, 2012, state reviewing physician Deborah Carter, Ph.D., concluded that the claimant's depressive disorder, with a history of adjustment disorder and mood disorder were non-severe impairments (Tr. 329-332). Dr. Carter's overall assessment was that the evidence of depression was largely limited to the claimant's one inpatient stay in June 2009, but that the claimant was fully credible and that his statements were consistent with history, presentation, mental status, and report of functioning (Tr. 341).

On April 1, 2013, the claimant was screened for mental health treatment and assessed with major depressive disorder, recurrent episode – severe, as well as PTSD

(Tr. 359). He was given a fair prognosis, but had noted negative reactions to several medications (Tr. 361).

At the administrative hearing, the claimant testified as to his mental impairments that he took a medication for depression, and that he had been receiving mental health treatment for three months at the time of the hearing (Tr. 48). When asked, he agreed that he had an impaired ability to concentrate and stay focused and on task (Tr. 49).

In his written opinion, the ALJ extensively summarized the claimant's hearing testimony and the medical evidence, including the evidence related to the claimant's inpatient mental health treatment. As relevant to this appeal, at step two the ALJ found the claimant's mental impairment to be nonsevere, stating that the only formal treatment was the "brief" thirteen-day admission in June 2009 (Tr. 14-15). At step four, the ALJ noted all the claimant's treatment records, including those records related to his mental health treatment (Tr. 17-23). He then used the boilerplate language to find the claimant not credible (Tr. 18), and assigned great weight to Dr. Carter's finding that the claimant's mental impairment was nonsevere (Tr. 23).

The claimant argues that the ALJ erred in failing to classify his depression as a severe impairment, and further asserts that this affected the ALJ's step five finding that the claimant could adjust to alternative work. Because the ALJ did find that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th

6

Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error *was not* harmless, because although the ALJ recited all the evidence in the record at step four, he nevertheless failed to discuss how the evidence affected the claimant's RFC, much less consider the "cumulative effect of claimant's impairments," at step four. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion].

The ALJ compounded this error when he wholly failed to properly assess the claimant's credibility. Deference is generally given to an ALJ's credibility determination, unless there is an indication that the ALJ misread the medical evidence taken as a whole. *See Casias*, 933 F.2d at 801. In assessing a claimant's complaints of pain, an ALJ may disregard a claimant's subjective complaints if unsupported by any clinical findings. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). The Court finds that the ALJ's evaluation of the claimant's credibility fell below these standards. Rather than engage in the proper analysis, the ALJ relied upon disfavored boilerplate and a recitation of the claimant's daily activities without explanation for his credibility findings. *Frey*, 816 F.2d at 516-17 ("Nor does the ALJ's citation of 'daily activities' indicate substantial evidence refuting Frey's complaint of disabling pain or its credibility. . . . [T]he claimant had performed a few household tasks, had worked on his cars, and had driven on occasional recreational trips. . . . [S]poradic performance does not establish that a person is capable of engaging in substantial gainful activity."), *citing Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983). Furthermore, the ALJ gave great weight to Dr. Carter's mental impairment assessment, but ignored her finding that the claimant *was* fully credible. *See*

*also Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) ("'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982).

Because the ALJ failed to evaluate the effect of *all* the claimant's impairments at all steps of the evaluation process, and further failed to conduct a proper credibility analysis, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**